STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

FRANK J. RIEBLI (CABN 221152)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Frank.Riebli@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-705 YGR |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING RECOMMENDATION |
| MARIA CORINA RODRIGUEZ, | |
| Defendant. | Date: May 27, 2021<br>Time: 10:30 a.m. |

## I.   INTRODUCTION

On May 27, 2021, Maria CORINA Rodriguez will plead guilty to Count 17 of the Indictment, which charges her with aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2), pursuant to a plea agreement with the government.  The Court will sentence her immediately after she pleads guilty.  The Guidelines recommend a sentence of 24-30 months.  Both Probation and the government recommend 18 months.

## II.   BACKGROUND

CORINA operated her own business, C&C Bookkeeping and Tax Service ("C&C"), preparing and submitting others' tax returns.  Pre-Sentence Report ("PSR") ¶ 6.  She ran C&C from 2005 through at least 2018.  Each year, she prepared and filed thousands of tax returns for other people; in 2018 alone, she filed approximately 3,796 returns.  Id.  CORINA also inflated or manufactured deductions for her clients.  Thus, of the 3,796 returns she prepared in 2018, about 76% (2,919 returns) resulted in tax refunds for her clients.  Id.  The IRS analyzed 53 tax returns CORINA submitted for clients between 2012 and 2016 and concluded that the overstated refunds caused a tax loss of $138,886.  Id. ¶ 11.

The false statements on the tax returns were not an accident.  An undercover IRS agent visited C&C and had his/her taxes prepared in both 2015 and 2016.  Id. ¶¶ 8-9.  Both times, C&C included deductions on the UC's tax returns that the UC had never discussed with C&C.  Id.  As CORINA admits in her plea agreement, she used numerous methods to inflate her customers' refunds, including claiming false or inflated education credits, unreimbursed employee expenses, child tax credits, charitable donations, personal property tax deductions, and other expenses.  Plea Agmt ¶ 2.e.  She did the same things for other clients.  Id. ¶ 2.g.

CORINA also made false statements on her own tax returns.  She claimed expenses she hadn't incurred, and she under-reported C&C's income.  Id. ¶ 2.k.; PSR ¶ 14.  For the period 2013 to 2015, this resulted in a $187,122 tax loss to the IRS.  PSR ¶ 14.  The total tax loss for which CORINA will accept responsibility in this negotiated disposition is $326,008.  Id. ¶ 15.

///

///

## III. DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); Carty, 520 F.3d at 991. The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment to the offender, deter the defendant and others from committing similar crimes in the future, and protect the community from future crimes of the defendant. 18 U.S.C. § 3553(a)(2). The Guidelines should be the starting point and the initial benchmark. Gall v. United States, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 350 (2007).

### A. CORINA's Guidelines Range is 24-30 Months.

The government and Probation calculate CORINA's Sentencing Guidelines range as follows:

| | |
|---|---|
| Base Offense Level, §§ 2T1.4(a)(1), 2T4.1(G) | 18 |
| Tax preparer, § 2T1.4(b)(1)(B) | +2 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 17 |
| Criminal History Category | I |
| Total Range (months) | 24-30 |

#### 1. The Base Offense Level.

The base offense level in a case involving the fraudulent preparation of tax returns is determined by the amount of the tax loss. U.S.S.G. § 2T1.4(a)(1). CORINA agrees, Plea Agmt ¶ 2, and Probation concurs, PSR ¶ 15, that a tax loss of $326,008 is attributable to CORINA. A tax loss between $250,000 and $550,000 corresponds to a Base Offense Level 18. Id. § 2T4.1(G).

///

### 2.     CORINA Was a Tax Preparer.

The Guidelines provide for a two-level increase where the defendant was a tax preparer, id. § 2T1.4(b)(1)(B), as CORINA was here.  Accordingly, the Court should increase her offense level by two points.

### 3.     CORINA Indicated Her Desire to Plead Guilty Early in the Case.

Though it has taken awhile to get to the date of her guilty plea and sentencing, CORINA indicated early in the case that she intended to resolve it by a plea, and this saved the government and the Court the resources that might otherwise have gone to litigating the matter.  Accordingly, she should receive a three-level deduction for acceptance of responsibility.  Id. § 3E1.1.

### 4.     Guidelines Range Calculation.

With these adjustments, CORINA's total offense level is 17.  The government agrees that CORINA has zero criminal history points.  This results in a CHC I, and a range of 24-30 months.

### B.     The Court Should Sentence CORINA to 18 Months, With $326,008 in Restitution.

Nobody likes paying taxes.  And yet the past year has shown just how essential it is that the government have money to fund programs like a nationwide vaccination campaign, and income replacement for people put out of work by the coronavirus pandemic.  That money comes from taxes.

CORINA apologizes for her misconduct and says she did it because she wanted to help poor people.  PSR ¶ 18.  That may have been part of her motivation – and if it was, it was noble but misplaced, since it was not only illegal but also subjected those same poor people to legal jeopardy when the IRS discovered the scheme – but it doesn't explain the false statements she made on her own tax returns, and those statements resulted in the majority of the loss attributable to her.  There was nothing altruistic about that.  And it took place over several years, so it was not a one-time lapse in judgment.

The Court may doubt whether prison sentences have any general deterrent effect in some cases (or types of cases), but punishment can have a general deterrent effect in cases involving professionals, like tax preparers.  Professionals generally must invest time and money in the training and education needed to obtain licenses and practice in their fields.  They will be less likely to use that training and education to commit crimes if they see the harsh consequences of doing so – not only the loss of their freedom for some period, but also the loss of their ability to practice in that field and thus the sacrifice of

their investment to get into the field in the first place.  This fact weighs in favor of a period of custody.

At the same time, it appears that CORINA has had a difficult life and was not cheating on her taxes to support an extravagant lifestyle.  In this respect, she is less like the typical white collar defendant the Court may see, and deserving of some lenience.  It is for this reason that the government agreed to recommend a below-Guidelines sentence of 18 months.

Further, the harm CORINA caused can be redressed through restitution – and the restitution is an important part of the agreement and the judgment in this case.  The parties agreed that she should pay $326,008 in restitution, though $326,008 is a conservative estimate of the tax loss the IRS incurred as a result of CORINA's actions, as it accounts only for the tax loss from 53 client tax returns in 5 years, and her own returns.  But it is also true that paying off that restitution will be an enormous task for her.  This too factored into the government decision to agree to recommend a below-Guidelines sentence.

**IV.  CONCLUSION**

For these reasons, the government recommends that the Court sentence CORINA to 18 months in federal custody, followed by a year of supervised release, and restitution in the amount of $326,008.

DATED:  May 20, 2021                                         Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

*/s/ Frank J. Riebli*
FRANK J. RIEBLI
Assistant United States Attorney